Booth, J.,
delivered tiie opinion of the court:
This case involves a single issue — that is, the proper classification for freight charges of certain articles shipped by the United States over claimant’s railroad. In the years 1902, 1903, and 1904 certain signal towers, conning-tower tubes, and turret tubes were transported by the claimant company from South Bethlehem, Pa., to Ogden, Utah, en route to San Francisco, Cal., to be used on the U. S. battleship Milwaukee, then in course of construction. There was no special contract of affreightment, the ordinary Government bills of lading being used and accepted, in which no special or any other rate was specified. The defendants settled the claims upon a basis of $1 per hundredweight for each article, the claimant company accepting the amount paid under protest, insisting upon an additional allowance as provided in their regularly published tariff sheets for armor plate. There is no dispute as to the amount involved herein.
During the period covered by this suit there was a commodity rate of $2.20 per hundredweight applicable to all shipments of armor plate. (Union Pacific R. R. Co. v. United States, No. 23459.) On iron and steel forgings, rough, not in any manner machine finished, a rate of $1 per hundredweight was provided. On conning towers there was a specific commodity rate of $2.60 per hundredweight. The discussion of the controversy is more or less concentrated upon questions of fact, few decisions have been cited, and *121 it is apparent that the proper classification of the merchandise involved depends upon the application of technical terms and the general rules and nomenclature employed.by those engaged in the manufacture of articles of this particular kind.
A signal tower, as its name imports, is a hollow cylindrical forging some 7 or 8 feet in diameter, containing 6 or 8 sight-holes, located in the aft of the ship, to be used by the signalman in manipulating different signals. A conning-tower tube is a hollow cylindrical forging drawn on a mandrel, inside diameter about 36 inches, length about 20 feet, and serves as a means of communication between the conning tower and the lower part of the ship. A turret tube is likewise a cylindrical forging, 50 inches in diameter, 3 inches thick, is located below the barbette, protecting the ammunition hoist. Armor plate is a metallic forging, of iron or steel, intended to be attached to the sides of a battleship with a view to rendering it shot-proof; it is conceded to be machine finished. It is not difficult to comprehend the difference between a machine-finished forging and a rough forging. The former comprehends the completed article ready to be set up for or capable of immediate use, the machine or machines having dispelled its entire crudeness. A rough forging is, of course, the very opposite; it may take the desired form and dimensions for the particular purpose intended, but essentially lacks the degree of perfectness obtained by application to machines; in fact, it is put upon the market in a crude state without the expenditure of the time and expense necessary to finish it with exactness and nicety. Armor plate, as known to the trade, has a distinct and separate identity. The Government is practically the maker’s single customer, and when speaking of it one instinctively implies its meaning to those plates of iron and steel attached to the sides of a warship. The particular trade so applies it. There is nothing in this record to warrant the extension of the term so as to comprehend analogous articles, even though manufactured from similar materials in a similar way. It could not be done in this case even if *122 sustained, for under the law commodity rates can not be applied by analogy. The treatment accorded armor plate in its manufacture and finish, involving as it does the application of the harveyized process, its reduction to exact dimensions, the polishing and face hardening of its sides, and the various other details of finish, so completely removes every suggestion of crudeness that it becomes a highly machine-finished article. It is true that some machinery is employed on the articles here involved; a machine is used to reduce them to proper dimensions and bore the sightholes. Such machining is, however, merely incidental and vicarious to the forging process. It is simply the employment of more modern methods to facilitate the manufacture of the material. It does not extend to that degree of perfectness and symmetry required in an article known to the trade as machine finished. As was most aptly stated by an expert witness in the case, in response to an interrogatory calling for the distinction between a machined forging and a machine-finished article—
“ The question involves the local nomenclature used in various works and shipyards. In our works we are not in the habit of using the term £ machine finished ’ but use the words ‘finish machined.’ A finish-machined forging, as I understand it, is a forging which has been accurately machined to ordered sizes, which ordered sizes have been precise enough to allow; the placing of the forging into position ready for use without subsequent machining. A machined forging, or, as we would say, a rough machined forging, may require further machining and is often rough machined for the purpose of developing suspected defects under the skin of the forging.” . 1
(See also Prosser v. United States, 1 U. S. Ct. of Cust. Appls. R., 550.)
The only machining done on any of these articles is set forth in Finding XY, and while the purpose of their manufacture and use aboard ship was in a sense similar to the designed use of armor plate, i. e., protection under fire, the latter to protect the vessel and the former to protect the men, ammunition, and certain important and vital appurtenances, it is impossible in the face of the record to sustain. *123 an. identity of classification in articles so distinct in composition, finish, and manufacture.
The petition is dismissed. It is so ordered.
Judge Ho wet did not hear this case, and took no part in the decision.